May it please the Court, I'm Eric Weaver on behalf of the petitioner, Benny Leon, and the appellant. I just have a couple... Excuse me, the last people were speaking loudly, so you want to turn up the volume of your voice. Okay, there. Thank you. I'm hard of hearing myself, so I'm very sympathetic. I was having trouble hearing the arguments in the audience. I just have a couple of points here, because I think the briefs are pretty complete. One, I think it's important that the grave doubt is not focused on whether the trial judge was wrong in finding the aggravating circumstance at the time. The grave doubt is whether the jury would have found the aggravating circumstance. And I think the jury had a much different view of the facts of this case than either the prosecutor, the trial judge, or even the district court. It was charged as a special circumstance lying-in-wait murder. The jury found that it was voluntary manslaughter. And I think all of the inferences that can be drawn from the record is they found that he acted with reckless disregard. Was an effort by the trial judge, as well as by the appellee, to reintroduce malice into the description of Mr. Leon's conduct. That's an irrelevant determination for this, and also the jury didn't agree with that. So the focus is would the jury have agreed that Rose was particularly vulnerable? I think that the factors that we cited in our brief show that in line with the cases that are applicable, she wasn't particularly vulnerable. She was not different than the average victim that was in her position. Well, she was different from the average victim. I'm not sure it goes that far. She's walking into her home where she lives. She has the person with whom she's living who's there. They have no indication they've ever had any difficulty or fighting or anything. It seems to me that there is some vulnerability. It's whether or not it measures up to our cases. It is different in the sense you walk into your own home. Your live-in person is there. There's no problems. All of a sudden, you're dead. That's pretty vulnerable. Well, in the abstract, I agree, but I think in this case, there's already a problem. The problem is he's informed them via the telephone that he's afraid because he thinks gangsters are lurking around his house. She's banging on the door. Right. I'm sorry. That's his problem. I'm thinking of her and her feet. She's walking in there into her home, the place of safety, her castle. There's no indication except the person that she looks to for security, her live-in person, is there welcoming, opening the door. That sounds pretty vulnerable. It just seems to me whether or not it follows our cases of particular vulnerability. Well, I think, though, that it's not a case which I think the appellee would like the court to think that this is like in the Lucy show when Desi Arnaz comes home and says, Lucy, I'm home. That's not the situation here. She's banging on the door. She's cursing. She's yelling. Her guard is up. It's not like she's walking in and bang. There's already been a difficulty there. I think that that changes the fact from the scenario of just walking into your own house. If she had walked up to the door, rung the doorbell, and the door had opened, then I would say, yes, she was in a particularly vulnerable situation. But I think it's not particularly vulnerable when there's already all of this atmosphere of danger, of fear on behalf of Mr. Leon, et cetera. So I think that's a distinction that can be made on that particular point. Turning to the excluded evidence, the only point I want to make here is I'm well aware of the standards, et cetera. But Mr. Leon was trying to present a picture of why he was so afraid. And the fact that one fact gets in, i.e., that he had been confronted at a gas station a little while ago, and therefore he was afraid, doesn't paint the complete picture. It raises an issue of paranoia that you get one confrontation in a gas station, and then suddenly you're cowering in your house with a gun. You're not answering the door when your significant other's at the door. I think the significant facts that are missing that paint the picture are the fact that he was confronted at his house a few months earlier. That changes the picture quite a bit, because they know where he lives. It's a repeat of a previous circumstance. And so I think in this case it does seriously undermine his defense, because it deprives him of the ability. I think that's a good argument to the trial judge, but you've got a different one here, don't you? You have to demonstrate here that it was inconsistent with or opposed to United States Supreme Court cases. So you're going a step harder for you to get these habeas cases overturned. Now, in what way would you argue that it's inconsistent with or an unreasonable application of cases of the United States Supreme Court to restrict this evidence? Well, I think that it rendered his trial fundamentally unfair, which is the standard, because he's trying to paint an explanation of why this could possibly happen. On the surface, the facts are incredible. Your significant other comes home, she's banging on the door, she's yelling. You know what her voice sounds like, you know she's there. Why are you cowering inside and refusing to open the door? He's trying to paint a picture that he's afraid that if he opens the door, these people who know where he lives are lurking outside and might take a shot at him in the light of the door. And I think that it is fundamentally unfair to take that, the ability to paint that complete picture away from him.  What I'm trying to say is you have an arguably paranoid person who has one confrontation in a gas station. Lots of people have confrontations in gas stations. But does that justify going home, hiding in your house, cowering with a gun and refusing to answer the door when your significant other bangs on the door? I don't think so. But if it's in the context of repeated problems with the same group and they know where you live, when he goes home he's not going to a place of refuge. He's going to a place where he's also vulnerable. And I think that that does really take away his defense and render the case fundamentally unfair. I think the jury got an inference of that by not buying the gross overcharging in this case. But they didn't have the full complete picture. And I think in that sense it could have even gone to the point of being a tragic accident. Surely he had no malice towards her or no ill will because he completely decompensated once this happened. Even when the police arrived they had to drag him away. So it's not like he was mad at her, which is the inference that's in Apelli's brief, that he's irritated because he had to get up. That's a rather outrageous comment on these facts given the way he reacted. And no one suggested that his reaction was insincere. So I think that it does make his defense fundamentally unfair, made this case fundamentally unfair by depriving him of the ability to present the complete picture. Unless there's questions, I'd like to save my remaining two minutes. Very good. We'll hear from the government. May it please the Court. My name is Tammy Crenson. I represent the Respondent, Warden Kirkland. Is that better? Much better. Thank you. There is no grave doubt as to the aggravating circumstance of particular vulnerability of the victim based on the factors that California allows a jury to consider or factors in determining whether that aggravating circumstance exists. First of all, California case law allows the consideration of the sudden manner in which an unsuspecting and unarmed victim is shot. Your argument, you stated in your brief well, and it's persuasive. The difficulty I have is Butler. Now, our case of Butler refers to particular vulnerability and then defines that as something physical, like weakness or age, that you're particularly vulnerable. But we have defined under Butler what particular vulnerability is. I don't know what to do with Butler other than if we follow it, it seems we'd have to send your case back. So why don't you just tell us how we can not follow Butler? I think the district court properly distinguished Butler for a couple of reasons. First of all, Butler was a situation where there was evidence and there was conflicting evidence that the victim had physical altercations that she had initiated with the offender and then also that she may have even been armed at the time the incident happened. There was a history of domestic violence in that case and the district court said that Butler talked about situations where in domestic violence all victims are vulnerable. So we would distinguish because of domestic violence? We would distinguish because here, in the sudden manner in which this happened, there wasn't a history of domestic violence. There was actually no notice that there was even any danger in this situation. But Butler says particularized violence equals such things as age and weakness. There's no evidence of age problem or weakness problem here. So somehow we have to deal with Butler and I don't know quite how to do it. In my reading of Butler, it didn't exclude any other factors. It said that California cases have focused on situations where there's physical characteristics and age, but it's not to the exclusion. Those factors certainly are age and physical limitations can certainly be factors that we find particularly vulnerable, but it doesn't limit us to looking at other California cases that establish there are other factors to consider. I understand there are other factors, but our problem is, and I understand the California cases, I read them, our problem is that we're required to follow our own precedent unless we can distinguish it. So when Butler defines the term of particularized vulnerability as something like personal characteristics such as age and weakness, they give those examples, then we have to either follow that and say there is no vulnerability here, particularized vulnerability, but to do so we have to distinguish the case. Certainly, and Butler did give those as examples. I don't think Butler said that those are the only factors that could be considered as just age, but those are certainly factors that establish a victim is particularly vulnerable. And again, the district court distinguished Butler by saying the victims were different in the situations where you have a victim who's got a history of domestic violence. I don't know why that's quite relevant though here because they'd had an argument. So the theory of the case was this was a planned murder that they had argued before and they were involved in a dispute. I don't understand the distinction you're trying to draw. Well, actually, the theory of the case was that he was, the prosecution's theory was that he was upset with her, not that there had been an argument. Well, everybody knew there was an argument. She was screaming at him on the phone. Well, she was screaming to let her in the house, but that's not the same as the two of them having an altercation from the standpoint of she's wanting in her home, which again shows she was not suspecting of anything. And the fact that she had to call him on the phone and he was going to have to come to the door, just because somebody's yelling at someone doesn't mean that, at the door to let him in at 1 o'clock in the morning. No, but I mean in the city of Butler where they turn the back, that's a vulnerable position as well too. They're in the home, less suspecting. Well, certainly some may disagree with Butler, but it is distinguishable from this. Whether we disagree or agree with Butler, it binds us. But the factors again are different when you have a situation where there's conflicting evidence in the record in Butler, whether she was actually carrying a knife at the time that the attack happened, and when she had physically attacked him previous to that time. This situation, the friends even said they knew of no problems between the two. That makes her particularly unsuspecting of what happened, and the sudden manner, she doesn't even make it through the door, and he's nudging her into the corner, and actually Amber, the other witness testified, he banged her into the corner, and a shot goes off. Not when you're at your own home, when it happens suddenly like that, and there's no indication there were any problems between the two of them prior to that. I think that that, beyond a reasonable doubt, establishes that she was particularly vulnerable in this situation. The other interesting thing, too, is the evidence. Before I get off that. Sure. Do you agree that in most of the cases involving particularly vulnerable victims, the victim had some characteristic like either youth or disability or was under extreme intoxication, something of that nature? Sure. The district court said that in most of the California cases that there have been, or that consistent there's physical limitations in age, but there also, as cited in our brief, there were three other cases we cited where the factors that existed here are things that the California court has found to make a victim particularly vulnerable, and that's, again, the sudden manner of an unsuspecting and unarmed victim, the fact that the person's at their own home, and the close relationship between the parties, and that's where this case is distinguishable from Butler because although there was a close relationship in Butler, there was also evidence that there had been a history of problems where somebody may know they're in danger in a domestic violence situation because there's been a history of problems and that person getting angry and taking it out on them. In this particular situation, the victim had no notice of anything by everyone's definition of what happened that night as well as any history between the two of them. And again, she barely walks in the door and she's being shot. I think the question isn't necessarily where we're sustaining the finding. The question is whether there's grave doubt by the exclusion of evidence which would tend to show that it was an accident. So the standard here is a little bit different. I mean, I understand your argument generically, but the burden on the defendant is a little less in this context, I think. I'm sorry. Grave doubt as to the exclusion of evidence or the aggravating factors? I'm talking about prejudice and whether there's grave doubt on the effect of the jury verdict here of all of the various errors, whether it's exclusion of evidence or it's Blakely or, you know. Well, and as to quickly I'll sum up by talking about the exclusion of evidence, again, it may be relevant as to why he went to or why he was carrying a gun that he had had threats. And certainly there was evidence of that, and the jury had heard evidence of his more contemporaneous threats that night. But as to whether the gun, as the district court found, as to whether the gun actually went off accidentally or intentionally, it has little to do with that. He knew she was on the porch. Well, right. No, but I think the argument is, and I'm just repeating what I think they're trying to say, is not whether or not it's the gun's accidental, and it's why he's carrying the gun to begin with, that he thinks that there might be somebody out there or not. Obviously, if he thinks it's her at the door and you think, well, there's some people getting in trouble at the gas station, it's a different picture than if they've had trouble before. They've come to his house. He's ready with a gun. He thinks they might be out there. He's hustling her in, and the gun accidentally goes off. That's the defense theory. And I think the theory is, look, if you just say there's trouble at the gas station, that's pretty, somebody can disbelieve that fairly easily. If there's a history where they're coming to the house, then it's different. So that's the argument. How do you respond to that? Well, the facts of the matter, first of all, the evidence was a bit overstated as to what it showed. It didn't show it was the same gang members. It didn't show, I mean, there's a lot of things that it didn't show. But from the standpoint of the fact of the jury, obviously if it was going with the prosecution's theory of premeditation, I agree. That's more relevant as to whether he was premeditating this attack on Rose or he was concerned about the gang members. But at the point that, so, again, it goes to explain why he may be carrying the gun, but it certainly, once he knows she's out on the porch, and once he knows that it's her, it doesn't explain how the gun ends up six inches, or at the most, six inches away from her neck and how she gets shot. That, it has little, it's not going to have a substantial and injurious effect on the verdict. Well, basically that's the whole theory. I mean, if you, I think that's the only defense they've got, is that he had good reason to have the gun and be nervous and he had accidentally discharged. But the jury's finding negates the fact that it was an accidental discharge because of the fact they found, although they found voluntary manslaughter, they found that he intentionally and personally discharged the gun. They were instructed. Yeah, see, the problem, though, with that is we're talking about two different things, but if you're talking about the exclusion of evidence, then the significance of the other evidence goes a little bit more to their theory. And certainly it is, you could argue that it's relevant evidence, but whether it rendered the trial unfair given what the jury had already heard of the threats, given the fact that they didn't accept premeditation, and given the evidence of what actually happened to the victim with the gun evidence, it doesn't render the trial unfair. Thank you. Any further questions? Before you leave, in the Butler case, as you recall, the person was considered a particularly vulnerable victim because she was shot from behind. That was the California case. We took it here, but we still had to find some prejudice. I want to read this part to you, and have you tell us how your case fits in. It said, But after examining California case law and the particularly vulnerable victim aggravating factor, we have grave doubt about whether a jury would have found that Darius was a particularly vulnerable victim of a crime of domestic assault because she was attacked from behind. Now, this grave doubt issue is one that we have to confront. If we have grave doubt, then we have to send it back under Butler, at least. But if we don't have grave doubt, we don't. So it's sort of a harmless approach, whether or not we need to. I wanted to give you a chance to tell us where you think, whether we should have a grave doubt, whether the jury would have found particularized vulnerability of the victim. No. For all the factors indicated, and I also want to mention that the district court, in distinguishing Butler, said too that no California case had suggested a factor to look at was that the victim was shot from behind, which is different in this situation. The factors that the trial court relied on were factors that, by California law, you can consider. And, again, given the factors where the cases have allowed you to look at the sudden impact or the sudden happening of it and the fact that she's at her home, which is similar to Butler, but the key thing here is the no notice of the danger that also distinguished it from Butler and the fact that it suddenly happened when she was coming in the door. So, again, based on those factors and the fact that the jury did find, although it seems somewhat interesting, the jury found that it was voluntary manslaughter, but the jury also found the gun use allegation. And so the jury was specifically instructed that they had to find that he discharged the gun intentionally in order to come to that conviction. So they did find he used the gun and that it wasn't an accident. Right. But it wasn't an accident in Butler either. There's no doubt about that. I mean, it's the jury found that. No, but one of the – I guess just to focus on it, and I don't want to belabor this either, but in Butler we said the California courts had in a few cases relied on aspects of the status of the victim that are more changeable than age or physical frailty, but have only done so when the victim was seriously, if only temporarily, incapacitated. And then it goes on later to say that, well, maybe turning your back is the same as sleeping, but that creates grave doubt for us. So how do you distinguish that from what you said, that she comes in the door, she's unsuspecting, and it happens suddenly? Again, I think, I mean, Butler, I think the district court properly distinguished that. And one of the main factors is because of the domestic – because the California law clearly requires that it has to be more particularly vulnerable than in a crime. It has to be different than the crimes of those natures. Domestic violence crimes, all victims are particularly vulnerable, just like drunk driving. The district court mentioned that. All victims are vulnerable because they're unsuspecting. But in this situation, as the district court said, in voluntary manslaughter situations, this victim is particularly vulnerable. This is different than that. And so when you're looking at the factors, that's how you distinguish it, because as the district court said, that in domestic violence cases, as in Butler, that they're always unsuspecting and they're always vulnerable. Voluntary manslaughter, it's a different situation. When was this case tried? What year? I believe it was – was it 2000? Was it before or after Butler? Butler was in 2008. It was way before Butler. Way before Butler. Well, I'm sympathetic when they say these cases. You know, you try them under your own law and then they come to us. But we're faced with what we're faced with. But thank you for your argument.  Rebuttal. I just have a couple of points about the facts. The facts, again, there was an inference that Mr. Leon grabbed Rose, jammed her up against the doorframe, and shot her. He opened the door. He said, get in here quick, or get the fuck in here, pardon me. Grabbed her. And as she went in, the gun went off. That's very different. He was afraid. It's clear from the facts that he was afraid someone was outside. She's standing in the light. He doesn't want to be standing in the light. And he pulls her in and the gun goes off. On the issue of the intentional use of the gun. That's not what the jury believed. I'm sorry? That's not what the jury believed. The jury believed – well, if the jury believed it was reckless disregard, that is what the jury believed. Because it's either intentional or reckless disregard. I think you can easily find under these facts that, because of the exclusion of his evidence, that it is reckless disregard to walk to the door with a gun in your hand when you know it's your girlfriend. However, had they realized that the gang members knew he lived there, maybe it's not even reckless disregard to have a gun. I understand your argument, but what's your best case that would say that the exclusion of that type of evidence is a constitutional violation because it rendered the trial so fundamentally unfair that we need to reverse it on federal habeas? The case was charged as a special circumstances first-degree murder case. That focuses on the intent of Mr. Leon. No, I understand. I'm asking for the best precedent you've got. I'm sorry? The best precedent you have. Off the top of my head, I can't tell you what the best precedent is. It's in my brief. I also wanted to talk about the gun use. Intentional gun use is general intent. If you carry a gun to a crime and someone gets shot, that's intentional gun use. You don't have to have a specific intent. So that adds nothing to the determination of Mr. Leon's intent. In terms of the notice, the theory of the case that the prosecutor had was they argued over some money at the party. Mr. Leon went home early. He's nursing a grudge over this argument about the money. He's angry when they get in. They have an argument over the phone, et cetera. So in terms of this, again, the Lucy, I'm home argument, that's not what the facts of this case are. The facts of this case are there is tension, there is reason to be on guard, and in that case I think it comes strictly within Butler. There's no physical characteristics. She's not intoxicated. She actually seems by her behavior as a pretty tough person. I just don't really think the court can find particular vulnerability. Unless the court has further questions. Thank you. Thank you both for your arguments. The case just heard will be submitted for decision.
judges: Mills, Wallace, Thomas